** PART II **
** INDIAN COUNTRY — FIREFIGHTING **
AS TO INDIVIDUAL ALLOTMENTS WHICH STILL RETAIN THEIR CHARACTER OF INDIAN COUNTRY, AD VALOREM TAXES ARE NOT PAID TO THE COUNTY BY THE INDIAN LANDOWNER. HOWEVER, IT IS MY GUESS THAT THE INDIAN COUNTRY LANDOWNER DOES PAY FOR UTILITIES, FIRE AND POLICE PROTECTION, ETC., THE SAME AS AN INDIVIDUAL NOT RESIDING IN INDIAN COUNTRY. I KNOW OF NO OKLAHOMA INDIAN TRIBE WHICH MAINTAINS A FIRE DEPARTMENT. BECAUSE OF THE NATURE OF INDIAN LAND IN OKLAHOMA, IT WOULD BE ECONOMICALLY IMPOSSIBLE FOR A TRIBE TO MAINTAIN ADEQUATE FIRE PROTECTION FOR ALL OF ITS MEMBERS WHO RESIDE IN INDIAN COUNTRY. FOR EXAMPLE, THE LANDS OF THE CHEROKEE NATION ENCOMPASS FOURTEEN (14) COUNTIES. INDIVIDUAL ALLOTMENT TRACTS ARE SCATTERED THROUGHOUT THAT AREA. THE CHEROKEES COULD NOT MAINTAIN ENOUGH FIRE STATIONS TO SERVICE SUCH A LARGE AREA, PARTICULARLY WHERE THEIR SERVICE AREAS ARE SPREAD OUT RANDOMLY THROUGHOUT THAT AREA. THEREFORE, THE ARGUMENT COULD LEGITIMATELY BE MADE THAT PROVISION OF FIRE PROTECTION TO INDIANS IN INDIAN COUNTRY DOES NOT INTERFERE WITH THE RIGHTS OF THE TRIBES TO SELF-GOVERNANCE, AND THEREFORE IS LEGALLY PERMISSIBLE. II. AND III.
YOUR SECOND AND THIRD QUESTIONS, AS REWORDED, ASK IF THE STATE FIRE MARSHAL MAY INSPECT INDIAN OWNED BUSINESSES ON INDIAN COUNTRY AND REQUIRE THAT SUCH BUSINESSES COMPLY WITH APPLICABLE CODES.
THE STATE'S AUTHORITY TO ZONE INDIAN COUNTRY, AND THE TRIBE'S AUTHORITY TO ZONE NON-MEMBERS IN INDIAN COUNTRY, HAVE BEEN THE SUBJECT OF COMPLEX LITIGATION. SEE E.G. BRENDALE V. CONFEDERATED YAKIMA NATION, 492 U.S., 106
L.ED.2D 343, 109 S.CT. (1989); SANQRE DE CRISTO, SUPRA; PEOPLE V. RHOADES, 90 CAL.RPTR. 794 (1970); SNOHOMISH COUNTY V. SEATTLE DISPOSAL COMPANY, 425 P.2D 22 (WASH. 1967).
THE BRENDALE CASE DEALT WITH THE TRIBE'S POWER TO ZONE NON-TRIBAL MEMBERS WHO RESIDE;ON ITS RESERVATION. THE REMAINING CASES DEAL WITH THE STATE, COUNTY, OR MUNICIPALITY'S POWER TO REGULATE BY ZONING, PLATTING, ETC., INDIAN COUNTRY WHICH FALLS WITHIN THEIR BOUNDARIES. FOR EXAMPLE, IN THE SANQRE DE CRISTO CASE, THE CITY AND COUNTY OF SANTA FE SOUGHT TO REGULATE, BY PLATTING, A LEASEHOLD WHICH WAS INDIAN COUNTRY OF THE TESUQUE PUEBLO. THE NEW MEXICO COURT CONCLUDED:
 "(I)T IS OBVIOUS TO US THAT CONGRESS INTENDED TO AND HAS ACCOMPLISHED BY ITS ENACTMENTS AND THE EXTENSIVE AND ALL-INCLUSIVE REGULATIONS PROMULGATED THERETO, A PREEMPTION BY OR A RESERVATION IN THE UNITED STATES OF ALL CONTROL OVER THE LEASING OF INDIAN LANDS, AND THIS INCLUDES THE SUBDIVISION, PLANNING AND PLATTING OF THESE LANDS FOR THE USES TO BE MADE THEREOF DURING THE TERM OF THE LEASEHOLD. UNDER THESE CIRCUMSTANCES THERE IS NO ROOM FOR THE STATE OR ITS POLITICAL SUBDIVISIONS TO IMPOSE ADDITIONAL OR CONFLICTING CONTROL RELATING TO THE SUBDIVISION, PLANNING OR PLATTING OF THE LANDS."
SAN RE DE CRISTO, 503 P.2D AT 331. BOTH THE RHOADES AND THE SNOHOMISH CASES DEAL WITH THE AUTHORITY OF THE STATE TO ZONE INDIAN COUNTRY. THEY REACH OPPOSITE RESULTS. RHOADES HELD THAT THE STATE OF CALIFORNIA COULD REQUIRE AN INDIAN MAN ON INDIAN COUNTRY TO MAINTAIN A STATE MANDATED FIRE BREAK. THE SNOHOMISH CASE HELD THAT SNOHOMISH COUNTY COULD NOT ZONE A WASTE DISPOSAL SITE WHICH WAS LOCATED ON INDIAN COUNTRY.
IN THE SNOHOMISH CASE THE WASHINGTON SUPREME COURT STATED:
 "THE COUNTY ALSO CONTENDS THAT TO HOLD THAT THE ZONING ORDINANCE DOES NOT APPLY TO THE LANDS IN QUESTION AND TO ALLOW INDIAN SELFREGULATION WOULD DENY TO THE MEMBERS OF THE TULALIP TRIBES AND TO RESIDENTS OF ADJOINING LANDS THE EQUAL PROTECTION OF THE LAWS. THIS NOVEL ARGUMENT WOULD FIND A DENIAL OF EQUAL PROTECTION IN EACH OF THE MYRIAD CASES OF JUST POSED BUT DIFFERENT REGULATION BY DIFFERENT SOVEREIGNS IN OUR SYSTEM OF FEDERALISM. WE HAVE ALREADY DETERMINED THAT THIS STATE HAS NO JURISDICTION TO CONTROL EITHER DIRECTLY OR INDIRECTLY THE USE OF THE INDIAN LANDS IN QUESTION. WHERE THERE IS NO JURISDICTION, THERE CAN BE NO DENIAL OF EQUAL PROTECTION."
SNOHOMISH, 425 P.2D AT 27. THE IMPORTANT THING TO BE CONSIDERED IN BOTH THE RHOADES AND SNOHOMISH CASES IS THAT BOTH CALIFORNIA AND WASHINGTON ARE PUBLIC LAW 280 STATES. THEREFORE, UNLIKE OKLAHOMA, THOSE STATES HAVE ASSUMED JURISDICTION OVER INDIAN COUNTRY. EVEN IN PUBLIC LAW 280 STATES, HOWEVER, THAT JURISDICTION IS STILL LIMITED. THUS, IN OKLAHOMA, WHICH IS NOT A PUBLIC LAW 280 STATE, THERE IS EVEN LESS STATE AUTHORITY OVER ZONING, CODE ENFORCEMENT, ETC., IN INDIAN COUNTRY.
YOU SHOULD ALSO BE AWARE OF 25 U.S.C.A. 231, WHICH PROVIDES:
 "THE SECRETARY OF THE INTERIOR, UNDER SUCH RULES AND REGULATIONS AS HE MAY PRESCRIBE, SHALL PERMIT THE AGENTS AND EMPLOYEES OF ANY STATE TO ENTER UPON INDIAN TRIBAL LANDS, RESERVATIONS, OR ALLOTMENTS THEREIN (1) FOR THE PURPOSE OF MAKING INSPECTION OF HEALTH AND EDUCATIONAL CONDITIONS AND ENFORCING SANITATION AND QUARANTINE REGULATIONS OR (2) TO ENFORCE THE PENALTIES OF STATE COMPULSORY SCHOOL ATTENDANCE LAWS AGAINST INDIAN CHILDREN, AND PARENTS, OR OTHER PERSONS IN LOCO PARENTIS EXCEPT THAT THIS SUBPARAGRAPH (2) SHALL NOT APPLY TO INDIANS OF ANY TRIBE IN WHICH A DULY CONSTITUTED GOVERNING BODY EXISTS UNTIL SUCH BODY HAS ADOPTED A RESOLUTION CONSENTING TO SUCH APPLICATION."
AS YOU CAN SEE, ALTHOUGH HEALTH REGULATIONS MAY BE ENFORCED BY THE STATE ON INDIAN LAND, THE APPROVAL OF NOT ONLY THE SECRETARY OF THE INTERIOR, BUT ALSO THE TRIBE ITSELF, IS REQUIRED.
THEREFORE, THE ANSWER TO YOUR SECOND AND THIRD QUESTIONS IS: NO, THE STATE DOES NOT HAVE THE AUTHORITY TO INSPECT OR REQUIRE CODE COMPLIANCE OF ANY INDIAN OWNED BUSINESS ON INDIAN COUNTRY, UNLESS SPECIFICALLY AUTHORIZED TO DO SO BY THE TRIBE AND THE SECRETARY OF THE INTERIOR.
AS TO YOUR FOURTH QUESTION, A STATE FIRE MARSHAL AGENT, WITH A CROSS-DEPUTIZATION OR DEPUTY SPECIAL OFFICER COMMISSION FROM THE BUREAU OF THE INTERIOR, COULD INVESTIGATE FIRES INVOLVING INDIAN BUSINESSES IN INDIAN COUNTRY, IF THERE WAS A POSSIBILITY THAT THE FIRE COULD INVOLVE A FEDERAL CRIME. IF THERE WAS ONLY A POSSIBILITY THAT A TRIBAL CRIME HAD BEEN BROKEN, THEN THE STATE FIRE MARSHAL AGENT WOULD ALSO NEED TO BE CROSS-DEPUTIZED BY THE APPROPRIATE TRIBE. STATE CRIMINAL LAWS, (ARSON, ETC.) WOULD NOT APPLY TO ACTS INVOLVING INDIANS IN INDIAN COUNTRY. ARSON IS ONE OF THE ENUMERATED CRIMES IN THE MAJOR CRIMES ACT, 18 U.S.C.A. 81,1153, AND WOULD THUS FALL UNDER THE JURISDICTION OF THE UNITED STATES. THUS, A FEDERAL CROSS-DEPUTIZATION AGREEMENT WOULD GIVE THE AGENT THE NEEDED AUTHORITY TO INVESTIGATE AN ARSON INVOLVING INDIANS IN INDIAN COUNTRY.
THE STATE FIRE MARSHAL, EVEN WITHOUT ANY CROSS-DEPUTIZATION AGREEMENT, DOES HAVE THE JURISDICTION ON INDIAN COUNTRY TO INVESTIGATE CRIMES INVOLVING NON-INDIANS. HOWEVER, IF AN INDIAN IS THE PERPETRATOR OF A CRIME, OR IF AN INDIAN OR INDIAN PROPERTY IS THE VICTIM OF THE CRIME, THEN THE STATE DOES NOT HAVE JURISDICTION. THEREFORE, A CROSS-DEPUTIZATION AGREEMENT WOULD BE NECESSARY IN ORDER FOR THE MARSHAL TO HAVE THE AUTHORITY TO INVESTIGATE.
I HOPE THAT THIS INFORMATION, AND THE COPY OF ATTY.GEN.OP. NO. 90-032, IS HELPFUL. IF YOU HAVE ANY FURTHER QUESTIONS, PLEASE DO NOT HESITATE TO GIVE ME A CALL.
(A. DIANE HAMMONS)